The matter on for oral argument is S. J. M.-D.C. v. Merrick Garland, cases 20-71799 and 21-821. And each side has 15 minutes. We'll allow time for people to come forward and get situated at council table. Okay, I have just a couple of questions before we start. First, just to remind everyone, we agreed we're not going to use actual names to identify people. However, we denied the motion to close the courtroom in this instance. And I think we still have pending, which we'll deal with in our dispositions, whether any dispositions are sealed as far as that goes. And I think I have Mr. Weber down as arguing the case, but I see two people seated there. So are you going to do all the argument, Mr. Weber? I know it's not through the court pro bono program, but is this a pro bono case? And we always kind of look at things, and it looks like it started with Greenberg, but then you're not with Greenberg anymore, but you're arguing the case? I am. Okay. And so, anyway, we always appreciate everyone coming to court, and we look forward to everyone's arguments. But I always – the court does appreciate when council does pro bono work because, you know, obviously there is not a civil get-in. And on civil cases, there are many people that would not have representation, and the issues that come before the court can be difficult. So we always appreciate having lawyers on both sides. So we thank both of you for your presence and look forward to the arguments. So we'll start. Good morning. Good morning. As you mentioned, I'm Eric Weber, counsel for the petitioners, my co-counsel, Bethy Rabe. And she's with Greenberg? With Greenberg Troward, yes. Okay. And this, as you mentioned as well, this case is under seal and subject to an order that the oral argument – in this oral argument, we're only going to be using, you know, not the names of the actors and parties here in order to protect the identities of the petitioners. We're here on the appeal of two decisions of the BIA, a consolidated appeal of two decisions of the BIA related to petitioners' requests for asylum and related relief. The first is the BIA's decision agreeing with the immigration court's denial of relief on nexus grounds. The IJ also considered cognizability. They denied on cognizability of certain particular social groups, but the BIA didn't address that directly, and I'll mention that later. The second is the BIA's cursory rejection of a motion to reopen, applying an incorrect standard, a standard the petitioners did not have to meet. And I'm going to address that. Well, now, on the motion to reopen, the government concedes that it was timely. Correct. When it's not timely, you're limited to change country conditions, but I did review that it does appear that there are alternate grounds there. And so the question is, are they adequate? Not that it wasn't addressed, in my view. Correct. And also, too, I note, and maybe you can cover this in your comments, the social group seems to be somewhat of a moving target, that I think the petitioners claimed five social groups initially, and now they're claiming two other social groups on the motion to reopen. Is that correct? Not exactly, Your Honor. There were several different social groups considered in the original appeal because there were several central reasons for their persecution, and the Immigration Court also presents their own central reasons, recharacterizing them as unprotected grounds. The new motion to reopen involves new evidence, a new persecutor, new facts, and new claims based on two different social groups because this is an entirely distinct claim. So now below, my understanding is we've always had, what, asylum, withholding, and CAT, but the CAT wasn't addressed at the BIA in that petition. Is that correct? In the original appeal of the original case, yes, the CAT was not appealed. Okay. Since these are distinct claims. On your motion to reopen, are you trying to have all three of them again on the motion to reopen, even though the CAT wasn't addressed on the initial one? So, yes, so all three plus humanitarian asylum, but on the motion to reopen, this is a new claim based on new evidence that came up, so it's new persecutors. So there's a situation now where you have persecution that happened when they came to the United States. The persecutor goes back to El Salvador, continues to persecute them to make death threats, and joins the gang that originally was persecuting and continues to persecute petitioners. So, yes, they are seeking new grounds, but that's because there's entirely new evidence, entirely new claims with a distinct persecutor at issue. Well, the BIA didn't see it that way. Yes, and I can address that. The BIA said, well, this is really the same thing. If the persecutor was back and joined the gang, why is that? Why is the BIA wrong in saying that this is really just gang persecution like the original that lacked merit? Well, two points on that. One is that this is a theme throughout the immigration judge and the BIA's decisions, that they are conflating all of these different protected grounds and calling them just general gang violence, which it is not. It is specific targeting for specific protected ground reasons. The second point on that is that the persecutor, the only relevance as to the new persecutor joining the gang is on the issue of will they be safe returning, because now this persecutor has access to the gang resources of being able to track any neighborhood in which they go. And the fact that they persecuted them for a completely different reason while here, not for the reasons that the gang persecuted in the first place, they're not one of the same. The reason now for the persecution is what? Family? So this is part of why this is under seal, is because the persecutor here was a family member of the petitioners, physically and sexually assaulted the petitioners, including minor petitioners. And that was not in the first petition? No. And it was something that mom learned of when she was in the United States? Correct. And confronted the relative by phone? Yes. Saying, why did you do that to my children? And the relative said, threatened, don't talk about that or I'm going to kill you or whatever. Right. And again, this is on several instances where we see the BIA calling persecution a motive. So we have these life or death ultimatums that the gang or the cousin persecutor are making, and they're saying, well, they're only being persecuted because they're refusing to give in to the demand of a continued sexual assault. Well, they're not paying attention to why they sexually assaulted and physically assaulted petitioners. But in the initial petition, the petitioner was claiming the persecution, what had to do with a familial relationship with a police officer sibling, and the court found that it was motivated by something else, right? In a way. So there are several things that they said about this, but this is a particularly difficult one because there's plenty of evidence that, one, presented that, one, gangs in El Salvador persecute police officers and their family, particularly their family because they're more vulnerable. And there's plenty of evidence from the police officer brother himself testifying as to all of the extreme, you know, care that he takes to protect the identity of any family members. He doesn't visit them. He lives in a neutral zone within 80 meters of the police station. His family only goes to the, you know, to the park that's right there in front of the police station. And the reason that they found out, that the gang found out that they were related to the police officer brother is because there was a confrontation with a specific gang member that was familiar with Petitioner because he was in Petitioner's anti-gang community program. And once the gang member learned of that, then the gang member went after the vulnerable members of his family, of the police officer's family, particularly their 15-year-old daughter, seeking to make her a girlfriend of the gang. And what that means in El Salvador is not, oh, we're going to go on dates. It means you are everybody's slave. And the only way out is death. And so that persecution. So I know that the record has a lot of threats when they're in El Salvador. Yes. Were they ever physically harmed? Is there any evidence of physical? Yes, absolutely. So. What would that be? For example, Petitioner, the 15-year-old daughter, when there was a continued attempt to force her to become the girlfriend. And, again, I was just pointing out, the IJ even admitted that they did that as a means to harass the police officer brother, but then say it's only purely retribution. But, yes, first there was an attack by a gang member on the daughter. And she got away from that one initially. The second time they beat her nearly to death, knocked her unconscious, thought she was dead, beat her with rocks in the head, fractured her skull. Then after that, they came over, tried to finish the job, is what they said. The only way that they got out is the police happened to be coming down the street. And the dog was barking and alerted the neighbors. Then there were instances where they were threatening them in person with a gun, forced them to undress, make sure they didn't have any MS-13 gang tattoos because we're dealing with the Barrio 18. But did the BIA and the IJ found that it was not on account of? Is that? Yes. They had several reasons that they considered, mischaracterizing really the motives, mischaracterizing the protected grounds, and trying to describe them and hyper-focusing on what they considered unprotected grounds. So the one was unwillingness to be recruited. That was one ground that they suggested. This was petitioner not willing to store weapons and drugs in her house. This was after seven months of persecution. And they're saying, oh, now she's saying no to storing guns and weapons in her house. Therefore, the reason they're persecuting her is because of this. No, this was, again, a life-or-death ultimatum. The only reason that they saw her as having any value to her life, petitioners having any value to her life, was that, oh, because she's working with the police. She's working with the current government. She's anti-gang. They're never going to suspect that she's going to store weapons and drugs for the gang. This was a life-or-death ultimatum. This was persecution in itself. This was a culmination of persecution, all because of these other protected grounds. Can I take you back to the motion to reopen? Absolutely. In the motion to reopen, are you allowed to bring a brand-new PSG and a brand-new claim? My understanding is yes. Okay. Because as I look at the statute, it says that you're only allowed to bring it if she establishes she was statutorily eligible for relief prior to the entry of the administratively final order of deportation. So all these facts that underlie the new claim for CAD and everything, it has to happen before the final order, the prior order, the prior BIA order. Is that your understanding of how it works? And factually, did that happen before the final BIA order? So, yes. It did happen before the final BIA order, and that we actually filed within 90 days of the final BIA order. If you look at the motion to reopen and the petition review itself, the timeline is there. Okay. So the biggest problem with the motion to reopen is they focused on this incorrect standard for, you know, I don't know how many paragraphs, and then spent two conclusory sentences denying, well, one sentence conclusively denying asylum and withholding, which are two different standards, you know, in one sentence, saying, well, they're not fundamentally different. Right. And then the reason why they dismissed it this time is the new evidence doesn't fundamentally change the nature of the claims. Right. So what's wrong with that? Well, if you look at a case that we cited, Salem v. Lynch, this is pretty on point. It says, quote, the BIA committed both legal and factual error when it declared that Salem's motion to reopen, filed on an entirely distinct ground from his prior request for relief, was, quote, cumulative of the information presented at his previous. That's exactly what's happening here. One, the respondent does a good job trying to, you know, pull out and extrapolate from these two sentences what they could have or should have said. But they didn't say it. They didn't give you anything, any reasoned decision to review here. That's an abuse of discretion itself. And, two, the reason they did give is exactly what this court has already said is not sufficient, basically just saying, oh, well, it's cumulative. It's the same as prior, even though there's a distinct ground. So before you run out of time, even conceding that that's correct, that they do have a different sentence on the Cat claim, you know, saying that there was not a prima facie case on Cat, why was that not sufficient? Well, simply just saying that there's no prima facie case that the Salvadoran government would acquiesce to torture for Cat protection, it's not sufficient because they're not showing us any evidence that they actually looked at. They're not giving us. Well, presumably they looked at the affidavit that was presented by the new affidavit, and it didn't. So, you know, I think you might have it. Yeah, I think you have a strong case on withholding and asylum. But on Cat, I think you could affirm on that, based off that ruling. You could, but there's still we still don't have anything to really argue or consider here. We don't know what they considered insufficient. And even if you did say that, there's evidence here presented that they should be accepting as true, along with the evidence that was originally presented. Do you want to save any time for rebuttal? You're down to your last minute. I'll probably save this last minute for rebuttal, but thank you. Okay. Thanks. Good morning. Good morning, Your Honors. May it please the Court. Rachel Berman-Voporos with the United States Attorney General. The Court should deny the petitions for review. Substantial evidence supports the agency's findings that the petitioners did not meet their burden to show that the gang members were or would be motivated by protected ground to harm them, and for similar reasons did not abuse discretion. The Board did not abuse its discretion by finding that the petitioners did not show a prima facie case for relief, and for that reason denied, one of the reasons why they denied their motion to reopen. And it's important to note here that the petitioners waived their original CAT claim before the Board, and their new claim is based on a fear of torture by the exact same gang. Well, do you concede that the motion to reopen was timely filed? Yes, Your Honor. Okay. But so in the review in court on the motion to reopen, obviously when it's not timely, you can only country conditions are you're out on that. And then there is a, I think what your counsel for the petitioners is arguing, a pretty brief alternative holding that they say is not sufficient. I think we have to presume that what they present on the motion to reopen is true. We don't get to weigh that, right? That's correct, Your Honor. And so what specific cogent reasons, which is the requirement, did the BIA provide for its alternative basis for denial of the motion to reopen? So I think it's important to look at the second page of the Board's decision on the motion to reopen, where they describe the petitioners' new claim in their motion to reopen. And here the Board says that the new, the gang member, the petitioner's fear, their relative, has threatened them with harm if they disclose the abuse to anyone, and they do not believe that the police will protect them. So here the Board is telling this court how they view the petitioner's claim. And so then later when they address the Prima Fauscia case, there is limited reasoning, but taking it together with how the Board viewed the petitioner's evidence, it's sufficient for this court to review the Board's decision. They concluded that the petitioner's new claim is once again based on retaliation from a gang member for not doing what the gang member wanted them to do. And this is supported by all three of the petitioner's affidavits, particularly the mother petitioner's, where she talks about how her relative wants vengeance against them because they disclosed the abuse to, I believe, some members of their church. And all three petitioners talk about their relative threatening to make them pay because they disclosed the abuse, and because they moved out. So again, this is retaliation for not doing what a gang member wanted them to do, which is very similar, really the same as their claim. Are they proposing new social groups on the petition for reopening? Yes, Your Honor. And what are those, in your view? I believe there's two of them. The first one is based on being Salvadoran women. The second one is based on being the relatives of the relative who harmed them in the United States. So that's what, are either of those cognizable? The agency did not address that issue, Your Honor, as it was not necessary, as a nexus is a distinct requirement for both asylum and withholding of removal. So do you agree that you can bring these new PSGs in a motion to reopen? Yes, Your Honor. Okay. So what do you think is the reason why the BIA said that the new evidence doesn't fundamentally change the nature of the claim? I don't see the connection there. So from that, I take the second page of the Board's decision, which is at page four of the administrative record for the second petition. Yeah, I'm looking at it now. The last line of the second paragraph, the cousin has threatened them with harm if they disclose the abuse to anyone. So this is, again, retaliation. The problem with that is that you're making an inferential leap there, that we have no idea if the BIA is doing the same leap, right? What's your proof that that's the reason why they find it not fundamentally changed? Because at the end of the decision, they say we do not, the evidence presented does not fundamentally change the nature of the claims before the immigration judge. So here the Board is saying the fundamental nature of the claim in the motion to reopen is the same as before the immigration judge. And what did the immigration judge find? The gang members were motivated by retaliation because the mother was cooperating with the police, because she would not hide guns and drugs for them, and because the eldest daughter would not join the gang. Yeah, I think that's a possible interpretation. My only problem is that, you know, we don't know if that's really the interpretation. And we can't supply, you know, under Chenery, we can't supply the reasons. Sure, Your Honor, you cannot supply the reasons. But I think looking at the second page of the Board's decision with that last paragraph is sufficient under the abuse of discretion standard. And on the motion to reopen, just to address an issue that came up with opposing counsel regarding the cat claim and how the Board addressed it in the motion to reopen. It's important to note that a motion to reopen is never in a vacuum. It always must be taken into consideration with the evidence that's already in the record and the findings, the conclusions of law that the agency has already made. And so when the petitioners waived their original cat claim before the Board, they were waiving the immigration judge's underlying findings of facts and conclusions of law, which includes the immigration judge's determination that the petitioners did not show that the government of their country would consent or acquiesce to the gang torturing them. And it's, of course, the same gang, the same resources, as opposing counsel mentioned. The petitioners' fear will be exerted against them if they return. And so — So that's one of my questions. So say that we believe with the petitioner that there wasn't enough on withholding an asylum, but then there's a separate sentence about the cat claim. Do you think that there was no prima facie of showing? Do you think that's sufficient on its own to affirm or that it was an abuse of discretion by the BIA? Yes, Your Honor. Given the other evidence in the record and the findings of fact and conclusions of law that the petitioners waived below. Given that, it's the exact same gang. And then they didn't change much in the new evidence. I thought the uncle was in a different gang, though. No, Your Honor. The 18 — I believe the relative they fear is part of the same gang that was threatening them in their home country. Got it. Okay. I guess the problem I have is that in your briefs, I thought you argued that it was speculative, you know, that the evidence presented was speculative, and that's why the BIA denied the motion to reopen. That is part of our argument, Your Honor. So, again, that's like not in the record. We don't know that at all if that's the BIA's reasoning. The board did, in their original decision on the merits, talk about petitioners' claims being speculative. They did not mention that in their new decision. Right. So we can't — I don't think we can credit that at all in the motion to reopen as a reason. I think you can, Your Honor, because in addressing the board's decision that the new claim presented is fundamentally of the same nature as the prior claim, you then look to what is the evidence contradicting that? You know, is there any other evidence of motive here or of their nexus to a protected ground? And here, the only other motive that the petitioners pro-offer is based on speculation. The mother petitioner's statement in her affidavit that she believes her relative believes that he owns them, and that's the reason that he harmed them. That's based on her ideas on what this relative believes. It's not based on any particular statements of this relative or encounters with him. And that itself is speculation. So where the court looks to other possible motives, the only other possible motive here is based on speculation, and that's not sufficient. Yeah. Again, I think that's a great inference. It might be correct, but we don't know. Right. The board's decision was not lengthy in their motion to reopen regarding the Prima Fauscia case, but there is sufficient reasoning here. I don't think we have additional questions, but you still have time if there's something else you wanted to say. Are there any additional questions about the first petition for review? Then I will just briefly close with saying that the court should deny the petitions for review. Substantial evidence supports the agency's findings that the petitioners below were targeted out of retaliation by the gang. The mother petitioner was targeted out of retaliation for cooperating with the police and for not hiding guns and drugs, and the eldest daughter was targeted out of retaliation for refusing to join the gang. Thank you. Thank you. I know I have limited time. I wanted to address just two points briefly. One is that the reasoning for the only reason that we have for the Weaver or the Kat claim is the acquiescence to torture. Well, there's new evidence on that as well that was presented, not just evidence that the police are not pursuing gang violence, but also that they're acquiescing to particularly femicide of domestic violence. There's plenty of country conditions evidence and affidavit testimony that El Salvador does not take domestic violence seriously, and that's the connection here that they didn't address. Is that in your petitioner's new affidavit? Yes, yes. Like ER 53 something? There's evidence in the motion we opened, and I believe we have some evidence of that as well in the original claims. I know I'm out of time. There was one more thing I wanted to point out, if you wouldn't mind, Your Honor. If you can say it in 30 seconds, I'll like it. In 30 seconds. The standard that is applied here is substantial evidence. However, this court has said before, and, Dr. Zarian, that this court, when the petitioners are deemed credible by the immigration judge, as they have been here, this court may review the nexus decisions de novo. So if you don't think that they were persecuted, or if you think that they were persecuted on account of certain grounds, you can take a look at the whole record here. All right. Thank you both for your argument in this matter. This case will stand submitted. And once again, thank you for doing pro bono work. Thank you. Yes, thank you.
judges: SCHROEDER, CALLAHAN, BUMATAY